IN THE SUPREME COURT OF TENNESSEE

AT KNOXVILLE

FILED

October 7, 1996

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| WALTER P. VOGEL, | ) | FOR PUBLICATION |
| | ) | |
| Plaintiff/Appellee, | ) | Filed: October 7, 1996 |
| | ) | |
| v. | ) | Hon. John Turnbull, Judge |
| | ) | |
| WELLS FARGO GUARD | ) | No. 03S01-9601-CV-00005 |
| SERVICES, | ) | |
| | ) | |
| Defendant/Appellant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| DINA TOBIN, DIRECTOR OF THE | ) | |
| DIVISION OF WORKERS' | ) | |
| COMPENSATION, TENNESSEE | ) | |
| DEPARTMENT OF LABOR, | ) | |
| SECOND INJURY FUND, STATE | ) | |
| OF TENNESSEE, and CHARLES | ) | |
| BURSON, ATTORNEY GENERAL | ) | |
| FOR THE STATE OF TENNESSEE, | ) | |
| | ) | |
| Defendants/Appellants. | ) | |

For the Defendant/Appellants
Wells Fargo Guard Services:

Ernest D. Bennett, III
Nashville, TN

For Defendants/Appellants
Dina Tobin and Charles Burson:

Charles W. Burson
Attorney General and Reporter

Dianne Stamey Dycus
Senior Counsel
Civil Division
Nashville, TN

For Plaintiff/Appellee Vogel:

David H. Dunaway
DAVID H. DUNAWAY &
ASSOCIATES
LaFollette, TN

**O P I N I O N**

REVERSED                                                                                          WHITE, J.

In this workers' compensation case, we are asked to review the trial court's determination that Tennessee Code Annotated Section 50-6-207(4)(A)(i) is unconstitutional and that plaintiff is entitled to life-time workers' compensation benefits. Having considered the positions of the parties, the plain language and the legislative intent of the statute, and relevant authority in other jurisdictions, we reverse.

Walter Vogel was employed as a security guard with Wells Fargo Guard Services. As part of his obligation, he inspected tractor-trailers. During one such inspection, he slipped on a muddy embankment, fell, and injured his shoulder and back. At the time of his fall, Vogel was seventy-three years of age and had substantial preexisting health problems, including stomach cancer, heart difficulties, lung problems, and arthritic degeneration of the spine.

As a result of his work-related fall, Vogel sought the care of orthopedic doctors. Dr. Donald Ivey performed back surgery on Vogel and assigned a twenty-two percent physical impairment rating based on the back condition. Dr. James McKinney, an orthopedic surgeon, found that Vogel had a seventy-three percent impairment to the body as a whole, twenty percent of which was attributable to Vogel's back injuries. Another orthopedic doctor, Dr. William Kennedy, agreed that Vogel had significant body impairment and attributed twenty-five percent to the back injury. Based on this evidence, the trial court found that the medical evidence in the case supported a finding of twenty-three percent medical impairment to the body as a whole.

In addition to medical witnesses, Vogel presented the testimony of Dr. Norman Hankins, a vocational expert. Hankins testified that Vogel's vocational impairment was one hundred percent. As a result of this testimony, the trial judge found that Vogel was one hundred percent permanently and totally disabled as a result of the on the job injury. The state concedes that the evidence supported this finding. The trial court apportioned the liability sixty-five percent to Wells Fargo, Vogel's present employer, and thirty-five percent to the Second Injury Fund.

In addition to awarding benefits, the trial court found that the statutory scheme was unconstitutional. Specifically, the court held that Tennessee Code Annotated Section 50-6-207(4)(A)(i)

> would purport to limit [Vogel's] recovery for the compensable disability found by the court to exist, due to his age. The court finds that there is no rational basis for a situation which would, as in this case, if a person was ninety-nine (99%) percent disabled, award him three hundred ninety-six (396) weeks but, if he is one hundred (100%) percent permanently and totally disabled, limit him to two hundred sixty (260) weeks. The court therefore finds after reviewing the entire record that the age related caps contained in the Tennessee Worker's Compensation Reform Act . . . should be and the same are declared to be arbitrary, capricious, illegal, and unconstitutional under the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution because they unfairly discriminate between workers based on age.

As a result of the trial judge's conclusion that the statute was unconstitutional, the judge awarded Vogel life-time benefits under the Workers' Compensation Act.

The statute at issue is part of the Workers' Compensation Reform Act of 1992. It provides, in relevant part, that

3

compensation shall be paid during the period of such permanent total disability until the employee reaches the age of sixty-five (65); provided, that with respect to disabilities resulting from injuries which occur after age sixty (60), regardless of the age of the employee, permanent total disability benefits are payable for a period of two hundred sixty (260) weeks. Such compensation payments shall be reduced by the amount of any old age insurance benefit payments attributable to employer contributions which the employee may receive under the Social Security Act, U.S.C., title 42, chapter 7, subchapter II, as amended.

Tenn. Code Ann. § 50-6- 207(4)(A)(i)(1995 Supp.). Vogel contends that the statute is constitutionally infirm because of the distinctions it draws between workers who are injured before and after age sixty-five and between workers who are injured before age sixty and those who are injured between the ages of sixty and sixty-five. He challenges the statute as violating both the equal protection clause and the Age Discrimination in Employment Act.

## I. Constitutional Analysis Generally

We begin with the presumption which the law attaches and which we cannot ignore that the acts of the General Assembly are constitutional. See e.g., Petition of Burson, 909 S.W.2d 768 (Tenn. 1995); Davis-Kidd Booksellers, Inc. v. McWherter, 866 S.W.2d 520 (Tenn. 1993); Bozeman v. Barker, 571 S.W.2d 279 (Tenn. 1978). In evaluating the constitutionality of a statute, we must indulge every presumption and resolve every doubt in favor of constitutionality. Petition of Burson, 909 S.W.2d 768 (Tenn. 1995). A statute comes to a court "clothed in a presumption of constitutionality [since] the Legislature does not intentionally pass an unconstitutional act." Cruz v. Chevrolet Grey Iron Div. of General Motors, 247 N.W.2d 764, 769 (Mich. 1976). Therefore, notwithstanding the trial judge's findings in this case, we must begin our inquiry with the presumption that the statute in question passes

constitutional muster.

## II. Equal Protection Challenge

From the beginning, we turn to analyze the statute in question recognizing the very real concern that it violates equal protection by classifying individuals differently based on age. In analyzing equal protection challenges, we must first determine the appropriate measure of scrutiny. In Brown v. Campbell County Board of Education, 915 S.W.2d 407 (Tenn. 1995), we discussed the three levels of scrutiny applicable to discrimination claims and concluded that claims such as these, in which the class allegedly discriminated against is not a suspect class, should be scrutinized under the rational basis test. Brown v. Campbell County Board of Education, 915 S.W.2d at 413-14. We join other jurisdictions in applying the rational basis test to constitutional challenges based on age. In a recent decision the Colorado Supreme Court held that "[c]lassifications based on age are not suspect or special warranting strict scrutiny or intermediate review." Industrial Claim Appeals Office v. Romero, 912 P.2d 62, 66 (Colo. 1996)(citing Massachusetts Board of Retirement v. Murgia, 427 U.S. 307, 313-14 (1976)). See also Sasso v Ram Property Management, 431 So.2d 204, 221 (Fla. App. 1983). Additionally, workers' compensation benefits are not deemed to be fundamental rights thereby triggering a higher standard of review. Industrial Claim Appeals Office v. Romero, 912 P.2d at 66.

Under the rational basis test, our inquiry is whether the classification system has a reasonable relationship to a legitimate state interest. "Unless the

individual challenging the statute can establish that the differences are unreasonable, the statute must be upheld." Tennessee Small School Systems v. McWherter, 851 S.W.2d 139, 154 (Tenn. 1992). If the classification is naturally and reasonably related to that which it seeks to accomplish it has passed the rational basis test and has met constitutional standards. Our chore, then, is to determine whether the statute naturally and reasonably relates to legitimate state purposes.

Our Workers' Compensation Act, like most, draws classifications. The fact that a statute classifies people differently, and results in inequality, does not invalidate the statute. In fact, all classification systems involve discrimination, but "only invidious discrimination with no rational basis for the statutory classification . . . offends the equal protection guarantee." Brown v. Goodyear Tire & Rubber Co., 599 P.2d 1031, 1035 (Kan. App. 1979), aff'd, 608 P.2d 1356 (Kan. 1980).

As is also true of most workers' compensation statutes, our statute uses age as a basis for various classifications. Benefits are terminated for permanently, totally disabled persons based on age and the length of benefits for others who are permanently and totally disabled depends upon their age.

The use of age as a basis for drawing distinctions is not necessarily problematic. In certain contexts, age-based discrimination has been deemed rational and essential to legitimate governmental purposes. See Gregory v. Ashcroft, 501 U.S. 452 (1991)(mandatory judicial retirement at age seventy is

constitutional); <u>Vance v. Bradley</u>, 440 U.S. 93 (1979)(mandatory foreign service officer retirement at age sixty is constitutional); <u>Massachusetts Board of Retirement v. Murgia</u>, 427 U.S. 307 (1976)(Massachusetts ban on employment of police officer over age fifty is constitutional). In the context of disability benefits, no presumption of rationality attaches; consequently, we must determine whether the discrimination is rationally related to any legitimate government purpose.

Our statute, like many others, ties the termination of benefits for the permanently, totally disabled worker to the commencement of Social Security old-age benefits. Within this structure is the basis for what the state claims is a rationally-based classification. The purpose of the statute, the state contends, is to "provide permanent and total benefits to the age of 65, the age when an employee is eligible for Social Security old-age benefits. This purpose, they allege is consistent with the overall purpose of workers' compensation law: the replacement of lost wages. <u>See</u> <u>Van Housler v. Mueller</u>, 741 S.W.2d 329, 330 (Tenn. 1987).

The issue of whether a workers' compensation scheme that ties the termination of disability benefits to the onset of old-age benefits has led courts to different, somewhat spirited debates.

In <u>Industrial Claim Appeals Office v. Romero</u>, 912 P.2d at 62, the Colorado Supreme Court declared an age-based classification in its workers' compensation law to be unconstitutional. The Colorado statute terminated

permanent total benefits "when the employee reaches the age of sixty-five years." As a result, persons sixty-five and older who were permanently and totally disabled were denied benefits for work-related injuries, while persons who suffered less than total disabilities were allowed to recover.

The Colorado Court concluded that the statute created a discriminatory classification between permanently totally disabled workers age sixty-five and over and permanently partially disabled workers age sixty-five and over. As a result, the Court analyzed the asserted governmental purposes to determine whether the classification scheme was rationally related to a legitimate government interest. The state alleged two governmental interests: prohibiting duplicate benefits and reducing the costs of the compensation program. Upon review, the Court found that "neither of those asserted purposes are rationally related to the classification created . . . ." Id. at 67.

The Court found the governmental purpose of providing a cost-saving, trade-off device, which enabled permanent total disability claimants under age sixty-five to receive a cost of living increase, to bear no rational relationship to the classification. They concluded that "[f]unding overall cost-of-living increases for workers' compensation recipients by eliminating benefits for permanently and totally disabled persons age sixty-five and older is arbitrary, unfair, and irrational." Id. at 69.

In analyzing the asserted governmental purpose of preventing duplicate benefits, the purpose implicit in the state's position here, the Court noted that

Social Security and workers' compensation benefits "do not serve the same purpose . . . . Social security retirement benefits . . . are not disability benefits, but are old-age entitlements serving the same function as pension payments. In contrast, workers' compensation benefits are provided to compensate employees who suffer work-related injuries for loss of income resulting from such injuries." Id. at 67-68.

Finally, the Court rejected the state's argument that it was entitled to draw distinctions based on administrative convenience. "[T]he legislature is not justified in eliminating workers' compensation benefits for all persons age sixty-five and older who have been permanently and totally disabled merely based on the administratively convenient presumption that such persons receive retirement benefits." Id. at 68.

That classification which the Colorado Court characterized as an "administratively convenient presumption" was lauded by the Washington Supreme Court as "serv[ing] a legitimate purpose in avoiding duplication of benefits." Harris v. State Department of Labor and Industries, 843 P.2d 1056, 1066 (Wa. 1993). The Washington Court discussed both the Florida approach relied on by Colorado and the Kansas approach and found the latter more palatable.

In the Florida decision, Sasso v. Ram Property Management, 452 So.2d 932 (Fla. 1984), the Court concluded that exclusion of those over 65 from disability benefits was not "rationally related to the prevention of 'double

dipping'" since old-age benefits and disability benefits serve different purposes. Sasso v. Ram Property Management, 452 So.2d at 934 n.3. The statute survived an equal protection challenge because it was rationally related to other legitimate government interests.

The Kansas approach, which the Washington Court found more persuasive, adopts the theory that old-age and disability benefits, though different, are "substantially similar" and serve the same purpose - the replacement of wages. Thus, the Kansas Court of Appeals, like the Washington Supreme Court, found that an age-based classification which terminated disability benefits upon the commencement of Social Security benefits "[h]as a rational basis, is not arbitrary, and affords like treatment of persons similarly situated." Brown v. Goodyear Tire and Rubber Co., 599 P.2d 1031, 1036 (Kan. App. 1979), aff'd, 608 P.2d 1356 (Kan. 1980). See also Berry v. H. R. Beal & Sons, 649 A.2d 1101 (Me. 1994).

The Kansas and Washington approach views workers' compensation benefits as part of an overall "wage-loss program" which includes unemployment, disability, and retirement benefits. When viewed as a part of an overall program, it is argued that "[t]he crucial operative fact is the wage loss, the cause of the wage loss merely dictates the category of legislation applicable." 4 A. Larson, Workmen's Compensation § 97.10 (1990)

> [I]f a work[er] undergoes a period of all three
> conditions, it does not follow that [the worker] should
> receive three sets of benefits . . . . [The worker] is
> experiencing only one wage loss and, in any logical
> system, should receive only one wage-loss benefit.

10

<u>Id</u>. Thus, a statute that includes termination of disability benefits upon commencement of old-age benefits, those courts conclude, is a rationally based statute.

Our statute is not identical to the Colorado statute deemed unconstitutional in <u>Romero</u>. Our statute terminates benefits for permanently, totally disabled workers at age sixty-five, but it provides 260 weeks of benefits for any worker who becomes permanently and totally disabled after age sixty regardless of the age. Unlike the Colorado statute, it does not deprive individuals like Vogel, seventy-three when injured, of benefits.

We conclude that our legislature intended to tie workers' compensation benefits for workers who are permanently and totally disabled to the commencement of Social Security benefits. The distinctions drawn between ages sixty and sixty-five, in an effort to accomplish that end, are not unconstitutional. Further the 260 week award for claimants injured after age sixty is rationally related to the goal of assuring that employees have an adequate recovery. While we acknowledge the numerous1 distinction between old-age and disability benefits,[1] we conclude that the legislature was attempting to serve legitimate state interest in awarding compensation benefits for the permanently, totally disabled employee until old-age Social Security benefits commenced. The scheme employed, differentiating on the basis of age, bears a

---

[1]All persons who reach age sixty-five, who have been employed, and who have paid into the Social Security Trust Fund are entitled to draw Social Security old-age benefits. These benefits are not for disability. An eligible worker, despite his or her ability to work, is entitled to receive Social Security old-age benefits. Disability benefits, under the workers' compensation statute, compensate the injured worker for that portion of his or her industrial ability that has been lost due to injury.

11

rational relationship to the accomplishment of that state interest.  We are persuaded, based on our reading of our statute and the excellent analyses by other states reviewed in this opinion, that Section 50-6-207(A)(i), insofar as it relates to termination of permanent total disability benefits for workers age sixty and over, does not violate equal protection.

### III.  Age Discrimination in Employment Challenge

We turn now to the question of whether the statutory scheme violates the Age Discrimination in Employment Act.  That Act makes it unlawful for an employer to

> fail or refuse to hire or to discharge any individual or otherwise (1) discriminate against any individual with respect to . . . compensation, terms, conditions, or privileges of employment, because of such individual's age; (2) to limit, segregate, or classify . . . employees in any way which would deprive or tend to deprive any individual or employment opportunities or otherwise adversely affect [employee's] status as an employee, because of such individual's age; or (3) to reduce the wage rate of any employee in order to comply with this chapter.

29 U.S.C. Section 623(a).  The Act specifically excludes "bona fide seniority system[s]" from coverage.  Thus, we must determine whether the application of the statute at issue concerns the "compensation, terms, conditions, or privileges of employment" and, if so, whether it violates the terms of the Act or is excluded from its coverage.

Some courts have held that state workers' compensation statutes do not concern the "compensation, terms, conditions, or privileges of employment" and thus are not affected by the Age Discrimination in  Employment Act.  See

Peck v. General Motors Corp., 417 N.W.2d 547 (Mich. App. 1987); O'Neill v. Department of Transportation, 442 So.2d 961 (Fla. App. 1983).   The Michigan Court of Appeals rationalized that while "[t]he ADEA addresses discrimination by employers against employees, [t]he Workers' Disability Compensation Act is a uniform system of compensation mandated by the state and not the employer." Peck v. General Motors Corp., 417 N.W.2d at 55. Likewise, the Florida Court of Appeals noted that ADEA provisions "are limited to employment practices within the control of the employer." O'Neill v. Department of Transportation,  442 So.2d at 962.

While we find these justifications less than probing, we are mindful of the fact that even if our statute concerns "compensation, terms, conditions, or privileges of employment" such as to fall under the Act, classifications based on age are not, by definition a violation of the Act.  If the differentiation is based on reasonable factors other than age, the classification is authorized, even if it involves age discrimination.  Brown v Goodyear Tire & Rubber Co., 599 P.2d at 1031.

Against this backdrop, we have plaintiff's  hollow claims that the statute violates the Act.  Plaintiff argues that Congress has mandated a policy that promotes the employment of older persons and consequently, decries the cut-off set by our statute.  Yet, plaintiff cites no cases in which a provision of a workers' compensation statute terminating benefits at age sixty-five has been deemed to violate the Age Discrimination in Employment Act.  Furthermore, plaintiff does not describe how the statute differentiates between protected

13

individuals and non-protected individuals to the detriment of older individuals. The disparity in our statute is not based on age, but on degree of disability. Such disparity does not violate the Age Discrimination in Employment Act.

### IV. Differentiation Between Permanent Total and Permanent Partial Benefits

Unlike most of the cases on this subject, the constitutional challenge before us is not limited to consideration of the reasonableness of tieing workers' compensation benefits to the onset of Social Security old-age benefits. Our more difficult concern is a classification that is not age-based but disability-based. Specifically, while permanently, totally disabled workers lose their benefits at age sixty-five (or after 260 weeks), permanently, partially disabled workers draw benefits based on a presumption that the maximum total benefit is 400 weeks. Tenn. Code Ann. § 50-6-207(3)(E)(1995 Supp.). Thus, a worker who becomes permanently, totally disabled at age sixty draws 260 weeks of benefits while the same worker who becomes ninety percent permanently, partially disabled draws 360 weeks of benefits.

Undoubtedly, the line drawn in this instance by our legislation is imperfect. It creates a result which, described in its best light, is odd. As the trial judge noted, plaintiff would have received more benefits from a determination of less disability. Such a scheme is irrational. It improperly differentiates between persons and cannot stand.

Although we conclude that the differentiation between permanently totally and permanently partially disabled workers over sixty is irrational, we

14

do not find that conclusion to authorize an award of lifetime benefits to plaintiff. That remedy, created by the trial judge, is inappropriate. It is the business of the legislature to pass new laws and modify existing ones. Thus, if the legislature deems the award of lifetime benefits the appropriate solution, they will undoubtedly amend the permanent, total disability section.

Pursuant to the statute, plaintiff, an employee who suffered "injuries . . . after age sixty (60)" is entitled to benefits "for a period of two hundred sixty (260) weeks" reduced by appropriate old-age benefits. Tenn. Code Ann. § 50-6-207(4)(A)(i)(1995 Supp.). In order to lend some rationality to the compensation scheme, we conclude that the 260 week cap set forth in Tennessee Code Annotated Section 50-6-207(4)(A)(i) applies to all injured workers over sixty who are awarded benefits under the Workers' Compensation statute for permanent partial or permanent total disability. We recognize that this conclusion militates against injured workers in some context notwithstanding the remedial purpose of the Act. It is, nonetheless, required to avoid an otherwise irrational result. Should the legislature intend lifetime benefits for all that are permanently totally disabled and a 400 week cap for permanent partial injuries, it may so declare.

## V. Conclusion

The purpose of the Workers' Compensation Act is to provide injured workers with periodic payments which serve as a substitute for wages. Van House v. Mueller Co., 741 S.W.2d 329, 330 (Tenn. 1987). Our legislature's response in awarding benefits for permanent total disability until age sixty-five,

or for 260 weeks for workers injured after age sixty, is a rational response to that purpose which takes into account that Social Security old-age insurance benefits commence at age sixty-five and which considers as well the requirements of the Age Discrimination in Employment Act. We, therefore, conclude that the provisions of Tennessee Code Annotated Section 50-6-207(4)(A)(i) regarding permanent total disability do not violate either the Equal Protection Clause of the United States Constitution or the Age Discrimination in Employment Act.

We, do not find, however, the statute's differential treatment of permanent total and permanent partial benefits for workers over age sixty to be rational. The trial court's award of lifetime benefits is reversed. Plaintiff is awarded benefits for 260 weeks pursuant to the statute. The costs are divided equally among the parties.

_____
Penny J. White, Justice

CONCUR:

Birch, C.J.
Drowota, Anderson, Reid, J.J.