IN THE SUPREME COURT OF TENNESSEE

AT NASHVILLE

**FILED**

**June 15, 1998**

**Cecil W. Crowson**
**Appellate Court Clerk**

STATE OF TENNESSEE,                    (

          Plaintiff-Appellee,          (

                                       (   Cheatham Circuit

                                       (

v.                                     (   Hon. Allen W. Wallace,

                                       (   Judge

                                       (

JAMES BLANTON,                         (   No. 01S01-9605-CC-00093

                                       (

          Defendant-Appellant.         (

**CONCURRING AND DISSENTING OPINION**

          I concur with the rejection of the defendant's claim that the statute under which he was sentenced is unconstitutional, and I concur in affirming the conviction of first degree murder.  However, I would modify the punishment to life imprisonment because the sentence of death in this case is excessive or disproportionate to the penalty imposed in similar cases.

**I**

          Before addressing the issue of proportionality, I am first compelled to comment on the defendant's claims attacking the constitutionality of the death penalty.  As in earlier cases, the defendant offers an often-repeated series of arguments against the sentence of death, all of which have been as often rejected  by the Court.  The lawyers for death row inmates, as well as the Court,

appear disengaged from any mutual consideration of meaningful issues.

For almost eight years, I have expressed grave concern about Tennessee's implementation of the death penalty. See State v. Black, 815 S.W.2d 166, 191-201 (Tenn. 1991) (Reid, C.J., dissenting). Although I have concurred in the imposition of the death penalty in several cases, see, e.g., State v. Hall, 958 S.W.2d 679 (Tenn. 1997); State v. Mann, 959 S.W.2d 503 (Tenn. 1997); State v. Bush, 942 S.W.2d 489 (Tenn. 1997); State v. Smith, 868 S.W.2d 516 (Tenn. 1993); State v. Howell, 868 S.W.2d 238 (Tenn. 1993); the constitutionality of this form of punishment and of the laws providing for its imposition have not been finally settled.

It is an accepted principle that the enactments of the General Assembly are presumed constitutional. Vogel v. Wells Fargo Guard Services, 937 S.W.2d 856, 858 (Tenn. 1996); Petition of Burson, 909 S.W.2d 763, 775 (Tenn. 1995). Whenever the constitutionality of a statute is attacked, this Court is required to indulge every presumption in favor of its validity and resolve any doubt in favor of, rather than against, the constitutionality of the act. Dorrier v. Dark, 537 S.W.2d 888, 891 (Tenn. 1976). Despite this well-settled rule of constitutional law, capital defendants have repeatedly argued that the death penalty is unconstitutional without presenting any basis sufficient to rebut the presumption of constitutionality.

For example, the United States Supreme Court has held that "an evolving sense of decency" determines the standard of protection afforded by the prohibition against "cruel and unusual punishments" found in the Eighth Amendment of the United States Constitution. See Trop v. Dulles, 356 U.S. 86, 78 S. Ct. 590, 2 L.Ed. 2d 630 (1958); Furman v. Georgia, 408 U.S. 238, 92 S. Ct. 2726, 33 L.Ed. 2d 346 (1972). At the same time, the Court has refused to hold that the imposition of the death penalty by a state is per se cruel and unusual punishment and thereby prohibited by the federal constitution. See Gregg v. Georgia, 428 U.S. 153, 96 S. Ct. 2909, 49 L.Ed. 2d 859 (1976). As I noted in Black, however, the determinations of the United States Supreme Court set only a minimum standard and do not limit this Court's authority to provide greater protection under the Tennessee Constitution. 815 S.W.2d at 192 (citing Doe v. Norris, 751 S.W.2d 834, 838 (Tenn. 1988) and Miller v. State, 584 S.W.2d 758, 761 (Tenn. 1979)). Therefore, despite the presumption of constitutionality, should it be shown that the death penalty offends the "standard of decency" existing in Tennessee, the death penalty would be barred under our state constitution. See State v. Middlebrooks, 840 S.W.2d 317, 351 (Tenn. 1992) (Reid, C.J., concurring and dissenting). Yet attorneys representing defendants in capital cases have never offered this Court any definitive or empirical evidence to establish such a "standard." These are factual issues that can be resolved only by proof; and in the absence of proof, there is no basis on which this Court can assess contemporary values in Tennessee under either the federal or state constitutions. See State v. Smith, 868 S.W.2d at 583 (Reid, C.J.,

concurring); State v. Howell, 868 S.W.2d at 264 (Reid, C.J., concurring).

In Black, I likewise indicated that the method of implementing a sentence of death in this State is also constitutionally suspect. 815 S.W.2d at 199-201. After reviewing the historical background of electrocution as a means of execution, I opined that the case should be remanded to allow the defendant "to present evidence to the [trial] court on the constitutional issue of whether electrocution per se is cruel and unusual punishment under Article I, § 16 of the Tennessee Constitution." While this is an issue of grave concern, it is one that cannot be decided without some evidence of the nature of death by electrocution. Nevertheless, no proof has ever been presented to the trial courts on this issue so that this Court might determine whether electrocution is "cruel and unusual punishment" under the state constitution.

The burden rests upon the party challenging the constitutionality of a statute to rebut the presumption of constitutionality. This burden has not been carried by those asserting the unconstitutionality of capital punishment in this State. As in prior cases, there is no basis in the record presently before the Court upon which the Court can make a determination that the death penalty violates or does not violate contemporary standards of decency in Tennessee or make a determination that death by electrocution is cruel and unusual punishment.

**II**

The first duty of this Court is to examine each case and apply the law fairly and dispassionately and thereby render justice under the law. To this purpose, the Court, and each justice, examines the record and reviews the law, giving attention to the statutory issues and assignments made by the defendant in each case.

The Court has a concomitant responsibility which is equally important, that is, to defend the integrity of the state's judicial system and its judgments. Review of the decisions of the United States Supreme Court and the opinions of the federal circuit and district courts shows that the sentences imposed under the capital sentencing schemes of the various states receive the highest scrutiny from the federal courts. It is the duty of this Court to interpret the statutes enacted by the General Assembly and particularly capital sentencing statutes so as to render convictions under state law which are consistent with the minimum standards of the federal constitution and are, therefore, impregnable against challenges in the federal courts. Nevertheless, this Court continues to countenance admitted errors that offend the federal constitution in the trial of capital cases and thereby puts at risk the convictions and sentences of some of the state's most culpable offenders.

A primary example is the Court's response to challenges to the constitutional validity of the so-called "heinous, atrocious or cruel" aggravating circumstance, particularly as it existed prior to

its amendment in 1989. See T.C.A. § 39-2-203(i)(5) (1982).[1] In the past, this Court has repeatedly and without analysis held that this aggravating circumstance is not constitutionally vague or overbroad and refused to respond to the developments of federal constitutional law that required further refinement of the law pertaining to this aggravating circumstance. See, e.g., State v. Thompson, 768 S.W.2d 239, 252 (Tenn. 1989) (responding to Maynard v. Cartwright, 486 U.S. 356, 108 S. Ct. 1353, 100 L.Ed. 2d 372 (1988)). The Court has persisted in this course despite dissent by its members, see State v. Shepherd, 902 S.W.2d 895, 909 (Tenn. 1995) (Reid, J., dissenting); State v. Cazes, 875 S.W.2d 253, 271-272 (Tenn. 1994)(Reid, C.J., dissenting); State v. Van Tran, 864 S.W.2d 465, 485-490 (Tenn. 1993) (Daughtrey , J., dissenting); Black, supra, 815 S.W.2d at 195-197 (Reid, C.J., dissenting), and warnings from justices of the United States Supreme Court. See, e.g., Barber v. Tennessee, ___ U.S. ___, 115 S. Ct. 1177, 130 L.Ed. 2d 1129 (1995) (Stewart, J. concurring) (finding the instruction on "depravity" adopted in State v. Williams, 690 S.W.2d 517 (Tenn. 1985), "plainly impermissible" under Godfrey v. Georgia, 446 U.S. 420, 100 S. Ct. 1759, 64 L.Ed. 2d 398 (1980)). The Court's refusal to respond to such criticism places in peril all sentences, including that imposed in the present case, that are based upon findings of this

[1]While the 1989 amendment of this aggravating circumstance replacing "depravity of mind" with "serious physical abuse beyond that necessary to produce death" appears to provide a meaningful standard for determining the appropriateness of death as a penalty, State v. Bush, 942 S.W.2d at 526 (Reid, J., concurring), the Court's continued broad application of this circumstance may threaten its constitutionality. See State v. Hodges, 944 S.W.2d 346, 361-362 (Reid, J., dissenting).

aggravating circumstance under the pre-1989 statute.[2]

### III

I would find that the sentence of death in this case "is excessive or disproportionate to the penalty imposed in similar cases, considering both the nature of the crime and the defendant." Tenn. Code Ann. § 39-13-206(c)(1)(D).

In State v. Bland, 958 S.W.2d 651 (Tenn. 1997), this Court set forth the analysis it would follow in performing comparative proportionality review of capital cases. Although I have expressed my view that Bland marked only "an important first step in articulating a structured review process" for comparative review, see State v. Bland, 958 S.W.2d at 676 (Reid, J., dissenting), it appears that Bland now provides the entire framework within which questions of comparative proportionality will be addressed by the Court. See, State v. Hall, 958 S.W.2d at 699; State v. Mann, 959 S.W.2d at 513. In the present opinion, the majority of the Court has undertaken a lengthy comparison of this case with other first degree murders, both capital and life cases, under the Bland analysis to find, as it has in almost all of the approximately 120 preceding cases, that the sentence of death is not disproportionate. In my opinion, application of even the modest procedure outlined in

_____

[2]In the same vein, a similar failure to respond to the holdings in McKoy v. North Carolina, 494 U.S. 433, 110 S. Ct. 1227, 103 L.Ed. 2d 269 (1990), and Mills v. Maryland, 486 U.S. 367, 108 S. Ct. 1860, 100 L.Ed. 2d 384 (1988), may threaten the validity of past convictions. See Austin v. Bell, 126 F.3d 843, 849 (6th Cir. 1997) (suggesting that Tennessee's instructions on mitigating circumstances may violate McKoy and Mills).

Bland requires that the sentence in this case be declared excessive and disproportionate.

Under Bland one of the factors listed for comparison is "the defendant's involvement or role in the murder." 958 S.W.2d at 667. No prior case in which the death penalty has been imposed in this state has presented such a paucity of evidence regarding the role of the defendant in the killing. A distinctive feature of this case is that it is based entirely upon circumstantial evidence. The proof establishes that the defendant was one of a group of three escaped convicts who were in the immediate area of the murders at the time the offenses occurred. It supports the finding by the jury that a member or members of this group killed the victims. It establishes that shortly after the murders the group arrived in Memphis, Tennessee, in the victims' automobile, which contained one of the murder weapons. However, it does not establish that the defendant himself killed the victims or was an active participant in the killings. While physical evidence reveals the method and manner of the victims' deaths, nothing in the proof identifies the actual killer or elucidates the individual roles of the three escapees in the Vesters' deaths. In short, there is no proof of the defendant's role in the killings. Items taken from residences where the physical evidence indicates that the defendant was present were found at the Vesters' home, but there is no proof that the defendant was present at the scene of the Vesters' murders.

The majority acknowledges that this is a case "where the

evidence did not positively identify the shooter." It cites to four other cases, State v. Sample, 680 S.W.2d 447 (Tenn. 1985); State v. McKay, 680 S.W.2d 447 (Tenn. 1985); State v. Dicks, 615 S.W.2d 126 (Tenn. 1981); and State v. Strouth, 620 S.W.2d 467 (Tenn. 1981), to support its conclusion that a sentence of death has previously been affirmed in such a case. However, examination of these four cases shows that they are not similar to the present case in this respect.

McKay and Sample were co-defendants in the robbery of a "sundry store" in Memphis during which two persons were killed. An eyewitness, whom Sample had attempted to kill during the offense, identified both men as being present in the store. The eyewitness also testified that he saw McKay shoot one of the victims and heard Sample, who was standing next to the other victim, announce that "I ought to kill all you son-of-bitches" and instruct McKay to "kill every son-of-a-bitch in here" before the defendants started shooting. McKay and Sample are not cases in which the proof did not positively identify the shooter or disclose the defendant's active participation in the murder.

In the other two cases, Dicks and Strouth were co-defendants who were tried separately. The two were involved in the robbery of a shop in Kingsport, Tennessee, during which the store owner suffered a severe blow to his head and a fatal knife wound to his throat. The opinions in the two cases indicate that both defendants gave statements to the police implicating the other and that, despite Dicks' assertions that he had remained outside in a

car during the robbery, physical evidence established that both men had been inside the shop. Upholding the sentences of death in both cases, this Court noted in Dicks, 615 S.W.2d at 130, that, based upon the evidence, a jury could reasonably find that the defendant Dicks was an "active participant" in the robbery and murder of the victim.

As noted earlier, the evidence in this case neither circumstantially nor directly establishes that the defendant participated in the murder. In short, the record is completely silent on this point. In this respect, there is no "similar" case in which the death penalty has been upheld by this Court since the enactment of the present capital punishment statute. Under these circumstances the sentence in this case is the sort of "aberrant death sentence" comparative proportionality review is meant to guard against.

IV

The constitutionality of the death penalty in a case of this sort depends upon proof of the nature of the defendant's participation in the felony and the killings. See State v. Branam, 855 S.W.2d 563, 570-571 (Tenn. 1993); see also Tison v. Arizona, 481 U.S. 137, 107 S. Ct. 1676, 95 L.Ed.2d 127 (1987); Enmund v. Florida, 458 U.S. 782, 102 S. Ct. 3368, 73 L.Ed. 2d 1140 (1982). The absence of any evidence of the defendant's role in the murders in this case is most disturbing. The Court, without so much as a nod to federal

constitutional law or prior Tennessee constitutional law, has abandoned any requirement that the sentencing phase of the trial accomplish genuine narrowing of the class of death-eligible defendants. State v. Middlebrooks, 840 S.W.2d at 354 (Reid, C.J., concurring and dissenting). Under Enmund and Tison, the federal constitution allows the death penalty only for a defendant who himself kills, attempts to kill, or intends that a killing take place or that lethal force will be imposed, or for any defendant whose personal involvement in the felony underlying the murder is substantial and who exhibits a reckless disregard or indifference to the value of human life. In Branam, this Court held that imposition of the death penalty was disproportionate and unconstitutional under the Eighth Amendment where there was no evidence to show that the defendant was ever in possession of the murder weapon or personally approached or confined the victim at any time during the robbery and that, although the evidence indicated that the defendant was aware that the triggerman was armed, there was "nothing in the record to establish the defendant's mental state as one of 'reckless indifference,' as that term is used in Tison." 855 S.W.2d at 571. The proof in this case regarding the defendant's involvement in the killings is equally lacking and critical questions relating to the defendant's involvement in the crime are left entirely to speculation. The Court has, by affirming the sentence of death in this case, abandoned even the pretense of limiting the sentence of death to a "demonstrably smaller and more blameworthy" class of murderers. Maynard v. Cartwright, 486 U.S. 356, 108 S. Ct. 1853 (1988). In my view, the sentence violates both the federal and

state constitutions.

For these reasons, I would modify the defendant's sentence to life imprisonment.  <u>See</u> Tenn. Code Ann. § 39-13-206(d)(2).

_____
Lyle Reid, Special Justice