# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### March 12, 2013 Session

## LEONARD EMBODY v. ROBERT E. COOPER, JR.

**Appeal from the Chancery Court for Davidson County**
**No. 101227-IV       Russell T. Perkins, Chancellor**

---

**No. M2012-01830-COA-R3-CV - Filed May 22, 2013**

---

This appeal arises from a challenge to the constitutionality of Tenn. Code Ann. § 39-17-1307 (a)(1), a law restricting the carrying of firearms in Tennessee. Leonard Embody ("Embody") challenged the validity of Tenn. Code Ann. § 39-17-1307 (a)(1)[1] in a case filed against Attorney General and Reporter Robert E. Cooper, Jr. ("Respondent") in the Chancery Court for Davidson County ("the Trial Court") on grounds that the law violates the Second Amendment to the United States Constitution and Tenn. Const. Art. I, § 26. The Trial Court upheld the law as constitutional. Embody filed an appeal to this Court. We hold that Tenn. Code Ann. § 39-17-1307 (a)(1) is a valid regulation of the carrying of firearms that does not contravene either the Second Amendment or Tenn. Const. Art. I, § 26. We affirm the judgment of the Trial Court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed;**
**Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the Court, in which JOHN W. MCCLARTY and THOMAS R. FRIERSON, II, JJ., joined.

Leonard Embody, pro se appellant.

Robert E. Cooper, Jr., Attorney General and Reporter; William E. Young, Solicitor General; Benjamin A. Whitehouse, Assistant Attorney General; for the appellee, Robert E. Cooper, Jr.

---

[1] Tenn. Code Ann. § 39-17-1307 (a)(1) (Supp. 2012) provides: "A person commits an offense who carries with the intent to go armed a firearm, a knife with a blade length exceeding four inches (4"), or a club."

## OPINION

## Background

The relevant factual background of this case is both brief and largely agreed upon by the parties. In March 2010, the Tennessee Department of Safety suspended Embody's handgun carry permit on the basis that his continued possession of the permit posed a material likelihood of risk of harm to the public. This action stemmed from a complaint from the Belle Meade Police Department alleging that Embody carried a firearm in public in an unsafe manner. Embody disputed this characterization of his actions, and thereafter requested an administrative hearing to challenge the suspension of his permit. In May 2010, Embody filed suit in the Chancery Court for Williamson County, challenging the administrative suspension of his handgun carry permit and seeking declaratory judgment that Tenn. Code Ann. § 39-17-1351, the law governing the issue of handgun carry permits, is unconstitutional. By agreement, the case later was transferred to the Trial Court.

In September 2010, Embody withdrew his administrative appeal of the suspension of his handgun carry permit. Embody also filed an amended complaint wherein he withdrew his challenge to the administrative suspension, and added a facial challenge to the constitutionality of Tenn. Code Ann. § 39-17-1307. In November 2010, Respondent filed a motion to dismiss Embody's suit for failure to state a claim upon which relief can be granted. The Trial Court granted Respondent's motion to dismiss in January 2011. Embody then filed a motion to alter or amend. The Trial Court, deeming Embody's motion as "respectful" and "well-crafted," vacated the dismissal and directed the parties to engage in discovery and file cross motions for summary judgment. In June 2011, the parties filed motions for summary judgment. In July 2012, the Trial Court entered a thorough and detailed order granting Respondent's motion for summary judgment. The Trial Court held, *inter alia*: 1) carrying firearms in public does not fall within the core Second Amendment right as articulated by the U.S. Supreme Court in recent landmark cases; the law survives a facial challenge; 2) the law withstands intermediate scrutiny, as the law represents a reasonable fit with the State's goal of preventing crime; and, 3) Embody's overbreadth and due process arguments are meritless. Embody filed a timely appeal to this Court.

## Discussion

Though not stated exactly as such, Embody raises one issue on appeal: whether the Trial Court erred in upholding the constitutionality of Tenn. Code Ann. § 39-17-1307 (a)(1), a law restricting the carrying of firearms in Tennessee. Embody has argued variously that his challenge to Tenn. Code Ann. § 39-17-1307 (a)(1) is a facial challenge, an as applied challenge, or a challenge based on overbreadth. In any event, this case was decided on a

-2-

motion for summary judgment.

Our Supreme Court reiterated the standard of review in summary judgment cases as follows:

> The scope of review of a grant of summary judgment is well established. Because our inquiry involves a question of law, no presumption of correctness attaches to the judgment, and our task is to review the record to determine whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied. *Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1997); *Cowden v. Sovran Bank/Cent. S.*, 816 S.W.2d 741, 744 (Tenn. 1991).
>
> A summary judgment may be granted only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; *Byrd v. Hall*, 847 S.W.2d 208, 214 (Tenn. 1993). The party seeking the summary judgment has the ultimate burden of persuasion "that there are no disputed, material facts creating a genuine issue for trial . . . and that he is entitled to judgment as a matter of law." *Id*. at 215. If that motion is properly supported, the burden to establish a genuine issue of material fact shifts to the non-moving party. In order to shift the burden, the movant must either affirmatively negate an essential element of the nonmovant's claim or demonstrate that the nonmoving party cannot establish an essential element of his case. *Id*. at 215 n.5; *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 8-9 (Tenn. 2008). "[C]onclusory assertion[s]" are not sufficient to shift the burden to the non-moving party. *Byrd*, 847 S.W.2d at 215; *see also Blanchard v. Kellum*, 975 S.W.2d 522, 525 (Tenn. 1998). Our state does not apply the federal standard for summary judgment. The standard established in *McCarley v. West Quality Food Service*, 960 S.W.2d 585, 588 (Tenn. 1998), sets out, in the words of one authority, "a reasonable, predictable summary judgment jurisprudence for our state." Judy M. Cornett, *The Legacy of Byrd v. Hall: Gossiping About Summary Judgment in Tennessee*, 69 Tenn. L. Rev. 175, 220 (2001).
>
> Courts must view the evidence and all reasonable inferences therefrom in the light most favorable to the non-moving party. *Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn. 1997). A grant of summary judgment is appropriate only when the facts and the reasonable inferences from those facts would permit a reasonable person to reach only one conclusion. *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 89 (Tenn. 2000). In making that assessment, this Court must discard all countervailing evidence. *Byrd*, 847 S.W.2d at 210-11.

Recently, this Court confirmed these principles in *Hannan*.

*Giggers v. Memphis Housing Authority*, 277 S.W.3d 359, 363-64 (Tenn. 2009).

To review, Tenn. Code Ann. § 39-17-1307 (a)(1) (Supp. 2012) provides: "A person commits an offense who carries with the intent to go armed a firearm, a knife with a blade length exceeding four inches (4"), or a club." Violation of this section is a misdemeanor offense, with a first violation punishable by imprisonment or a fine not to exceed $500. Tenn. Code Ann. § 39-17-1307 (a)(2) (A) - (C) (2010).

Our analysis of this issue must begin "with the presumption which the law attaches and which we cannot ignore that the acts of the General Assembly are constitutional." *Vogel v. Wells Fargo Guard Services*, 937 S.W.2d 856, 858 (Tenn. 1996). Therefore, we begin our analysis with the presumption that Tenn. Code Ann. § 39-17-1307(a)(1) is constitutional. Additionally, "we must indulge every presumption and resolve every doubt in favor of constitutionality." *Id.*

Insofar as Embody asserts a facial challenge to Tenn. Code Ann. § 39-17-1307 (a)(1), he faces a steep burden. The United States Supreme Court has stated that success in a facial challenge requires a showing that the law in question is invalid under all circumstances. *United States v. Salerno*, 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). Our Supreme Court has stated that when bringing a facial challenge to the validity of a statute, "the challenger must establish that no set of circumstances exists under which the statute, as written, would be valid." *Waters v. Farr*, 291 S.W.3d 873, 882 (Tenn. 2009). The crux of Embody's argument is that, as a law-abiding citizen, the legislature may not constitutionally bar him from carrying loaded firearms in public. To properly address Embody's challenge to Tenn. Code Ann. § 39-17-1307 (a)(1), we look to some of the major cases in state and federal jurisprudence concerning the right to keep and bear arms.

The Second Amendment to the United States Constitution reads as follows: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. Amend. II. The State of Tennessee has its own analogue to the Second Amendment, which provides: "That the citizens of this State have a right to keep and to bear arms for their common defense; but the Legislature shall have power, by law, to regulate the wearing of arms with a view to prevent crime." Tenn. Const. Art. I, § 26. As Art. I, § 26 clearly provides, our Legislature has the power "to regulate the wearing of arms with a view to prevent crime."

In *Aymette v. State*, 21 Tenn. 154, 1840 WL 1554 (1840), the Tennessee Supreme Court considered the validity of a statute that banned the open or concealed carry

of certain weapons, such as Bowie knives. The appellant apparently had gone about in public brandishing a Bowie knife. *Id*. at *1. As perceived by the court, the appellant's argument was that Tennessee's constitution at the time guaranteed him the right to "arm himself in any manner he may choose . . . and, thus armed, to appear wherever he may think proper . . . and that any law regulating his social conduct, by restraining the use of any weapon or regulating the manner in which it shall be carried, is beyond the legislative competency to enact, and is void." *Id*. After a discussion about the right to keep and bear arms in the context of common defense, the *Aymette* court stated:

> The Legislature, therefore, have a right to prohibit the wearing or keeping weapons dangerous to the peace and safety of the citizens, and which are not usual in civilized warfare, or would not contribute to the common defence. The right to keep and bear arms for the common defence is a great political right. It respects the citizens, on the one hand, and the rulers on the other. And, although this right must be inviolably preserved, yet it does not follow that the Legislature is prohibited altogether from passing laws regulating the manner in which these arms may be employed.

*Aymette*, 1840 WL 1554, at *4.

Several decades later, in 1871, in *Andrews v. State*, 50 Tenn. 165, 1871 WL 3579, at *3 (1871), the Tennessee Supreme Court addressed the constitutionality of a law which forbade "any person to publicly or privately carry a dirk, swordcane, Spanish stiletto, belt or pocket pistol or revolver."[2] The *Andrews* court, in finding an individual right to keep arms, stated: "Bearing arms for the common defense may well be held to be a political right . . . intended to be guaranteed; but the right to keep them, with all that is implied fairly as an incident to this right, is a private individual right . . . ." *Id*. at *8. The court specified that the arms subject to protection from prohibition were "the rifle of all descriptions, the shot gun, the musket, and repeater, are such arms; and that under the Constitution the right to keep such arms, can not be infringed or forbidden by the Legislature." *Id*. at *7. However, these weapons could be regulated. *Id*. Ultimately, the court upheld the statute in question, save for its provision regarding pistols.[3] *Id*. at *11. The court elaborated:

> And we add, that this right to keep arms, though one secured by the

---

[2]The Tennessee Constitution of 1870, our present Constitution, was operative in *Andrews*.

[3]The *Andrews* court stated that it was "a matter to be settled by evidence" whether a pistol as described in the statute was a military weapon, thus shielding it from prohibition. *Andrews*, 1871 WL 3579, at *11.

Constitution, with such incidents as we have indicated in this opinion, yet it is no more above regulation for the general good than any other right. The right to hold property is secured by the Constitution, and no man can be deprived of his property "but by the judgment of his peers, or the law of the land." If the citizen is possessed of a horse, under the Constitution it is protected and his right guaranteed, but he could not, by virtue of this guaranteed title, claim that he had the right to take his horse into a church to the disturbance of the people; nor into a public assemblage in the streets of a town or city, if the Legislature chose to prohibit the latter and make it a high misdemeanor.

The principle on which all right to regulate the use in public of these articles of property, is, that no man can so use his own as to violate the rights of others, or of the community of which he is a member.

So we may say, with reference to such arms, as we have held, he may keep and use in the ordinary mode known to the country, no law can punish him for so doing, while he uses such arms at home or on his own premises; he may do with his own as he will, while doing no wrong to others. Yet, when he carries his property abroad, goes among the people in public assemblages where others are to be affected by his conduct, then he brings himself within the pale of public regulation, and must submit to such restriction on the mode of using or carrying his property as the people through their Legislature, shall see fit to impose for the general good.

*Andrews*, 1871 WL 3579, at *10. *Aymette* and *Andrews*, while rather old cases, nevertheless remain instructive on the right to keep and bear arms in Tennessee, with both acknowledging the right of the Legislature to impose certain regulations on the wearing of firearms. As already discussed, it is Tenn. Const. Art. I, § 26 that both acknowledges the right to keep and bear arms and gives our Legislature the power "to regulate the wearing of arms...." Our Legislature in enacting Tenn. Code Ann. § 39-17-1307 (a)(1) did nothing more than attempt "to regulate the wearing of arms" as permitted by Tenn. Const. Art. I, § 26.

In the modern era, recent landmark U.S. Supreme Court cases have added to what historically had been a relative dearth of Second Amendment jurisprudence. In the landmark case of *District of Columbia v. Heller*, 554 U.S. 570, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008), the U.S. Supreme Court, in striking down a Washington, D.C. law that effectively banned possession of handguns even in the home, held for the first time that the Second Amendment to the United States Constitution protects an individual's right to keep and bear arms:

There seems to us no doubt, on the basis of both text and history, that the Second Amendment conferred an individual right to keep and bear arms. Of course the right was not unlimited, just as the First Amendment's right of free speech was not, see, *e.g.*, *United States v. Williams*, 553 U.S. 285, 128 S.Ct. 1830, 170 L.Ed.2d 650 (2008). Thus, we do not read the Second Amendment to protect the right of citizens to carry arms for *any sort* of confrontation, just as we do not read the First Amendment to protect the right of citizens to speak for *any purpose*.

*Heller*, 554 U.S. at 595, 128 S.Ct. 2783 (emphasis in original). With regard to permissible regulations in light of this individual right to keep and bear arms, the court stated:

Like most rights, the right secured by the Second Amendment is not unlimited. From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose. See, e.g., *Sheldon*, in 5 Blume 346; Rawle 123; Pomeroy 152–153; Abbott 333. For example, the majority of the 19th-century courts to consider the question held that prohibitions on carrying concealed weapons were lawful under the Second Amendment or state analogues. See, *e.g.*, *State v. Chandler*, 5 La. Ann., at 489–490; *Nunn v. State*, 1 Ga., at 251; see generally 2 Kent *340, n. 2; The American Students' Blackstone 84, n. 11 (G. Chase ed. 1884). Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.

*Id*. at 626-27, 128 S.Ct. 2783. The court wrote of what it termed "the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Id*. at 635, 128 S.Ct. 2783. In *McDonald v. City of Chicago*, - - - U.S. - - -, 130 S.Ct. 3020, 177 L. Ed. 2d. 894 (2010), the U.S. Supreme Court incorporated the *Heller* holding to the states. Similar to the facts of *Heller*, *McDonald* involved a Chicago law banning the possession of handguns in the home. 130 S.Ct. at 3026.

In the wake of *Heller* and *McDonald*, the Sixth Circuit adopted a two-pronged test in Second Amendment challenges in the case of *United States v. Greeno*, 679 F.3d 510 (6th Cir. 2012). The test consists of the following:

Under the first prong, the court asks whether the challenged law burdens conduct that falls within the scope of the Second Amendment right, as historically understood. *Chester*, 628 F.3d at 680. As the Seventh Circuit recognized, " *Heller* suggests that some federal gun laws will survive Second Amendment challenge because they regulate activity falling outside the terms of the right as publicly understood when the Bill of Rights was ratified." *Ezell*, 651 F.3d at 702. If the Government demonstrates that the challenged statute "regulates activity falling outside the scope of the Second Amendment right as it was understood at the relevant historical moment—1791 [Bill of Rights ratification] or 1868 [Fourteenth Amendment ratification]—then the analysis can stop there; the regulated activity is categorically unprotected, and the law is not subject to further Second Amendment review." *Id*. at 702–03.

"If the government cannot establish this—if the historical evidence is inconclusive or suggests that the regulated activity is *not* categorically unprotected—then there must be a second inquiry into the strength of the government's justification for restricting or regulating the exercise of Second Amendment rights." *Id*. at 703. Under this prong, the court applies the appropriate level of scrutiny. *Marzzarella*, 614 F.3d at 89. If the law satisfies the applicable standard, it is constitutional. *Id*. If it does not, "it is invalid." *Id*.

*Id*. at 518. As pointed out by the Trial Court in its order, some courts have found intermediate scrutiny to be appropriate in cases of this type, where the core Second Amendment right has not been implicated. *See United States v. Chester*, 628 F.3d 673, 683 (4th Cir. 2010). Intermediate scrutiny requires that the statute or legislation serve important governmental objectives and be substantially related to achieving those objectives. *United States v. Marzzarella*, 614 F.3d 85, 98-99 (3rd Cir. 2010).

After our review of the applicable law, we find no historical or legal basis for Embody's apparent contention that the state may not regulate the carrying of firearms. Anchored in *Andrews*, longstanding Tennessee law is such that the legislature may regulate the carry of firearms with an intent to prevent crime. Embody makes much of his law-abiding status, but this is not the point. A view to *prevent* crime could entail regulations that must be adhered to by people without criminal backgrounds.

As regards the Second Amendment, *Heller* and *McDonald* unquestionably recognize an individual's right to keep and bear arms. However, neither *Heller* nor *McDonald*, nor any U.S. Supreme Court opinion to date has precluded legislatures from regulating the carry of firearms. This remains a nascent and developing area of law. In any

case, there are important distinctions between *Heller* and the instant case. Both *Heller* and *McDonald* involved highly onerous restrictions on gun ownership which effectively banned keeping usable handguns even in one's home. *Heller* and *McDonald* both involved the core Second Amendment right of "law-abiding, responsible citizens to use arms in defense of hearth and home." *Heller*, 554 U.S. at 635, 128 S.Ct. 2783. We believe this right of "citizens to use arms in defense of hearth and home" to be the core Second Amendment right under *Heller* and *McDonald*. Tenn. Code Ann. § 39-17-1307 (a)(1) is not a prohibition on the possession on firearms in the home. It is not even a genuine prohibition on the carrying of firearms, as there are numerous defenses to the law. Tenn. Code Ann. § 39-17-1308 provides:

> (a) It is a defense to the application of § 39-17-1307 if the possession or carrying was:
>
> (1) Of an unloaded rifle, shotgun or handgun not concealed on or about the person and the ammunition for the weapon was not in the immediate vicinity of the person or weapon;
>
> (2) By a person authorized to possess or carry a firearm pursuant to § 39-17-1315 or § 39-17-1351;
>
> (3) At the person's:
>
>> (A) Place of residence;
>> (B) Place of business; or
>> (C) Premises;
>
> (4) Incident to lawful hunting, trapping, fishing, camping, sport shooting or other lawful activity;
>
> (5) By a person possessing a rifle or shotgun while engaged in the lawful protection of livestock from predatory animals;
>
> (6) By a Tennessee valley authority officer who holds a valid commission from the commissioner of safety pursuant to this part while the officer is in the performance of the officer's official duties;
>
> (7) By a state, county or municipal judge or any federal judge or any federal or county magistrate;

(8) By a person possessing a club or baton who holds a valid state security guard/officer registration card as a private security guard/officer, issued by the commissioner, and who also has certification that the officer has had training in the use of club or baton that is valid and issued by a person certified to give training in the use of clubs or batons;

(9) By any person possessing a club or baton who holds a certificate that the person has had training in the use of a club or baton for self-defense that is valid and issued by a certified person authorized to give training in the use of clubs or batons, and is not prohibited from purchasing a firearm under any local, state or federal laws; or

(10) By any out-of-state, full-time, commissioned law enforcement officer who holds a valid commission card from the appropriate out-of-state law enforcement agency and a photo identification; provided, that if no valid commission card and photo identification are retained, then it shall be unlawful for that officer to carry firearms in this state and the provisions of this section shall not apply. The defense provided by this subdivision (a)(10) shall only be applicable if the state where the out-of-state officer is employed has entered into a reciprocity agreement with this state that allows a full-time, commissioned law enforcement officer in Tennessee to lawfully carry or possess a weapon in the other state.

Tenn. Code Ann. § 39-17-1308 (a) (2010).

Additionally, Tennesseans who meet certain statutory qualifications will be issued handgun carry permits if they wish one. Tenn. Code Ann. § 39-17-1351 (Supp. 2012) (detailing the requirements and procedures for application). The Department of Safety, however, retains the ability to revoke a permit upon, among other things, a finding that an individual poses a material likelihood of risk of harm to the public. Tenn. Code Ann. § 39-17-1352 (a)(3) (Supp. 2012).[4] In no sense does Tenn. Code Ann. § 39-17-1307 (a)(1) come close to resembling the sort of extremely restrictive laws struck down in *Heller* and *McDonald*. Tenn. Code Ann. § 39-17-1307 (a)(1) does not regulate activities incident to the core right to keep and bear arms for protection for 'hearth and home' as articulated by the U.S. Supreme Court in *Heller* and *McDonald*. Embody's facial challenge falls far short of the mark.

---

[4]We also note that Embody voluntarily withdrew his administrative challenge to the revocation of his handgun carry permit. While Embody may regret this decision, it may not be said that he was denied a fair process.

Embody has characterized this action as both a facial and as applied challenge. Under the post-*Heller* jurisprudence as applied by many lower courts and by the Sixth Circuit in *Greeno*, we look to 1) the scope of the Second Amendment right as historically understood, and, if necessary, 2) choose and apply a level of scrutiny as required if the historical evidence is inconclusive. The *Heller* court underwent a thorough review of the history of gun rights in the United States. For reasons previously discussed, we believe that Tenn. Code Ann. § 39-17-1307 (a)(1) does not implicate core Second Amendment rights. Nevertheless, as the historical evidence for this issue is not *conclusive*, we will choose a level of scrutiny. We believe, as did the Trial Court, that intermediate scrutiny is appropriate. Tenn. Code Ann. § 39-17-1307 (a)(1), with certain exceptions regulates the carry of firearms in Tennessee. Individuals may apply for handgun carry permits, subject to a number of disqualifying conditions. *See* Tenn. Code Ann. § 39-17-1351. This is a regulation that reasonably comports with the State's goal of preventing crime. Whether in light of *Heller* or the analysis adopted in *Greeno*, Tenn. Code Ann. § 39-17-1307 (a)(1) is a legitimate regulation of the carry of firearms that does not run afoul of the Second Amendment.

We emphasize that we need not and do not pass judgment on the policy wisdom of Tenn. Code Ann. § 39-17-1307 (a)(1), and the associated handgun carry permit laws. That is certainly not the court's proper function. Political policy decisions belong to the General Assembly. We hold only that Tenn. Code Ann. § 39-17-1307 (a)(1) is within the constitutionally permissible realm of firearm regulations available to the state, and it violates neither the state nor federal constitution. The judgment of the Trial Court is affirmed.

## Conclusion

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed against Leonard Embody, and his surety, if any.

_____
D. MICHAEL SWINEY, JUDGE